IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PRESTON S. ROBERTS,
    Petitioner,

vs.                                     Case No.: 3:13cv82/WS/EMT

SECRETARY OF FLORIDA DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 17). Petitioner filed a response in opposition to the motion (doc. 22).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is established by the state court record (doc. 17).[1] Following a jury trial, Petitioner was convicted in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-5290 of lewd or lascivious battery (victim 12 years of age or older but

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (doc. 17), unless otherwise indicated. If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

under 16 years of age) (Ex. C at 106, Ex. D). He was sentenced as a sex offender to 94.5 months of imprisonment with pre-sentence jail credit of 51 days (Ex. C at 112–69).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-2843 (Exs. B, E). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. E). The First DCA affirmed the judgment per curiam without written opinion on April 7, 2009, with the mandate issuing May 5, 2009 (Exs. F, G). Roberts v. State, 6 So. 3d 611 (Fla. 1st DCA 2009) (Table).

On June 16, 2009, Petitioner filed a motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. I at 53–62). The state circuit court denied the motion on June 25, 2009 (*id.* at 65). Orders denying Rule 3.800(c) motions are not appealable. *See* Davis v. State, 745 So. 2d 499 (Fla. 1st DCA 1999); Daniels v. State, 568 So. 2d 63 (Fla. 1st DCA 1990).

On April 16, 2010, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 66–85). On November 4, 2010, the state circuit court issued a non-final order striking the motion as facially insufficient, and granting Petitioner leave to file an amended motion within the time limitations set forth in Rule 3.850 (*id.* at 107–08). Petitioner, through counsel, filed an amended motion on April 18, 2011 (*id.* at 109–26). The state circuit court held a limited evidentiary hearing on one of Petitioner's claims (*id.* at 140–41, 145–89). In an order rendered November 17, 2011, the court denied the Rule 3.850 motion (*id.* at 190–206). Petitioner appealed the decision to the First DCA, Case No. 1D11-6944 (Exs. H, J). The First DCA affirmed the decision per curiam without written opinion on December 7, 2012, with the mandate issuing February 15, 2013 (Exs. l, O). Roberts v. State, No. 1D11-6944, 2012 WL 6097701, at *1 (Fla. 1st DCA Dec. 7, 2012) (Table).

Petitioner commenced this federal habeas action on February 19, 2013 (doc. 1 at 20).

II.     ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas

petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1). Respondent contends the appropriate statutory trigger for the federal limitations period in this case is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review (doc. 17 at 4). Petitioner does not dispute that § 2244(d)(1)(A) is the applicable statutory trigger.

Under § 2244(d)(1)(A), Petitioner's conviction became final on July 7, 2009, upon expiration of the 90-day period in which Petitioner could have filed a petition for a writ of certiorari in the United States Supreme Court.[2] The statute of limitations began to run on July 8, 2009, the day after the 90-day period expired. *See* Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir. 2007) (citing Fed. R. Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA). Petitioner had one year from that date, or until July 8, 2010, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira, 494 F.3d at 1289 n.1). Petitioner did not file his federal petition on or before that date; therefore, it is untimely unless tolling principles apply and render it timely.

---

[2] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the 90-day period expired on July 7, 2009.

Case No.: 3:13cv82/WS/EMT

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Starting on July 8, 2009, the federal limitations period ran for **282 days** until Petitioner filed a Rule 3.850 motion on April 16, 2010.[3] The Rule 3.850 motion tolled the limitations period until November 4, 2010, the date of the state circuit court's order striking the motion. The limitations period expired **83 days** later, on January 27, 2011 (**282 days** + **83 days** = **365 days**). Petitioner's amended Rule 3.850 motion, filed April 18, 2011, did not toll the limitations period, because the limitations period had already expired by the time he filed it.[4] *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Further, the amended Rule 3.850 motion did not "relate back" so as to toll the idle period between the date of the court's order striking the initial motion and the date Petitioner filed his amended motion. *See* Moore v. Crosby, 321 F.3d 1377 (11th Cir. 2003).[5] Therefore, Petitioner's

---

[3] Petitioner filed a motion to mitigate or reduce sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure on June 17, 2009, which was denied on June 26, 2009. However, that motion does not toll the AEDPA limitations period. *See, e.g.,* Baker v. McNeil, 439 F. App'x 786 (11th Cir. 2011) (unpublished), *cert. denied*, 132 S. Ct. 1633 (2012); Shanklin v. Tucker, No. 3:11cv357/RV/MD, 2012 WL 1398186, *3 (N.D. Fla. Mar. 21, 2012) (unpublished), *Report and Recommendation Adopted by* 2012 WL 1396238 (N.D. Fla. Apr. 23, 2012) (unpublished); Johnson v. Secretary, Dep't of Corr., No. 6:12cv1218-Orl-36TBS, 2013 WL 1786638, *2 (M.D. Fla. Apr. 26, 2013). Nevertheless, the ten (10) days that the Rule 3.800(c) motion was pending does not affect the court's determination that Petitioner's federal petition was untimely.

[4] Because the state court struck the initial Rule 3.850 motion, there was nothing "pending" in the state court between the date the state post-conviction court struck the initial motion and the date Petitioner filed an amended Rule 3.850 motion on April 18, 2011. *See, e.g.,* Green v. Tucker, No. 3:10cv418/MCR/MD, 2011 WL 6942895, *3 (N.D. Fla. Nov. 17, 2011) (unpublished) (finding nothing "pending" in state court between date motion for post-conviction relief was struck based on Spera v. State of Florida, 971 So. 2d 754 (Fla. 2007) and date amended motion for post-conviction relief was filed; therefore, AEDPA limitations period was not tolled in interim period), *Report and Recommendation Adopted by* 2012 WL 13552 (N.D. Fla. Jan. 4, 2012) (unpublished); Smith v. Buss, No. 3:09cv278/MCR/EMT, 2011 WL 818157, *6 (N.D. Fla. Feb. 4, 2011) (unpublished) (motion was not "pending" so as to toll limitations period during period between date state court struck initial Rule 3.850 motion as facially insufficient and date petitioner filed amended Rule 3.850 motion), *Report and Recommendation Adopted by* 2011 WL 810017 (N.D. Fla. Feb. 28, 2011) (unpublished).

[5] In Moore, the Florida habeas petitioner did not initiate an appeal from the state circuit court's denial of his timely Rule 3.850 post-conviction motion after an evidentiary hearing. 321 F.3d at 1378–79. Some time later, after the AEDPA's statute of limitations expired, Moore sought and the state appellate court granted a belated appeal from the

Case No.: 3:13cv82/WS/EMT

§ 2254 petition, filed more than two (2) years after the federal limitations period expired, was untimely.[6]

Petitioner argues the untimely filing of his federal petition was caused by his post-conviction counsel's negligence and "miscalculation of time" (doc. 22 at 3, 8, 25). However, he acknowledges that negligence and miscalculation by counsel does not constitute grounds for equitable tolling of the federal limitations period (*id.* at 8).

Petitioner additionally contends the untimely filing of certain grounds raised in his federal petition, Grounds One, Four, and Six, was caused by ineffective assistance of counsel on direct appeal (doc. 22 at 21–26).[7] Petitioner contends his appellate counsel was negligent for failing to raise these issues on direct appeal, even though Petitioner acknowledges the issues were not preserved in the trial court (*id.* at 22–23). Petitioner contends if appellate counsel had presented the issues on direct appeal, Petitioner could have asserted them in a federal habeas petition prior to expiration of the AEDPA's limitations period (*id.* at 21–26).

---

denial of his Rule 3.850 motion. *Id.* At issue in Moore's federal § 2254 action was "how long the petitioner's state application was 'pending' within the meaning of [§ 2244(d)(2)]" because, without allowing any "retroactive" tolling for the belated post-conviction appeal, Moore's federal petition was undisputedly untimely. *Id.* at 1379. Affirming the district court's dismissal of Moore's § 2254 petition as untimely, the Eleventh Circuit explained:

> In conclusion, we hold that the petitioner's belated appeal motion was not pending during the limitations period. The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a "properly filed" post-conviction application actually pending in state court. A state application filed after expiration of the limitations period does not relate back so as to toll idle periods preceding the filing of the federal petition. The plain language of the statute provides for tolling "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). While a "properly filed" application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired. In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired.

*Id.* at 1381.

[6] Petitioner admits the federal limitations period expired on January 26, 2011, and that his federal petition is untimely (doc. 22 at 1, 3, 5).

[7] In Ground One, Petitioner contends his trial counsel was ineffective for failing to file a motion to discharge or a motion to dismiss under Florida's speedy trial rule (doc. 1 at 3–4). In Ground Four, Petitioner contends his trial counsel was ineffective for failing to object to the trial court's violation of Petitioner's right to a public trial by clearing the courtroom when minors testified (*id.* at 10–14). In Ground Six, Petitioner contends trial counsel was ineffective for failing to object to the prosecutor's improper comments during closing arguments (*id.* at 17–18).

Case No.: 3:13cv82/WS/EMT

Petitioner failed to demonstrate that his untimely federal filing was due to ineffective assistance of appellate counsel. Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. *See* Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003). Here, Petitioner did not present a claim of ineffective assistance of appellate counsel to the First DCA, and the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired. Therefore, any such claim could not serve as cause for the procedural default of the claims presented in Grounds One, Four, and Six.

Additionally, Petitioner failed to demonstrate his appellate counsel was ineffective for failing to raise Grounds One, Four, and Six. The standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. To demonstrate prejudice, petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable

Case No.: 3:13cv82/WS/EMT

conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.1988)).

Here, Petitioner's Grounds One, Four, and Six are all claims of ineffective assistance of trial counsel (doc. 1 at 3–4, 10–14, 17–18). Florida law is well settled that claims of ineffective assistance of trial counsel are not, except under limited circumstances, cognizable on direct appeal. *See* State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) ("As to whether the issue of adequacy of representation can be raised for the first time on appeal, we hold that it cannot properly be raised for the first time on direct appeal, since, as was recognized in [Chester v. State, 276 So. 2d 76 (Fla. 2d DCA 1973)], 'it is a matter that has not previously been ruled upon by the trial court.' An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made."); *see also* Wuornos v. State, 676 So. 2d 972, 974 (Fla. 1996) (ineffective assistance of counsel claim not cognizable on direct appeal, only by collateral challenge); Johnston v. State, 841 So. 2d 349 (Fla. 2003) (claim that trial counsel was ineffective should have been raised in post-conviction proceeding). Additionally, under Florida law the proper procedural vehicle for an ineffective assistance of trial counsel claim is a Rule 3.850 motion. *See* Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987) ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850."); Barber, 301 So. 2d at 9 ("3.850 provides a means by which this issue may properly be resolved in a correct procedural setting in the trial court where evidence may be taken.").

Although there are "rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue," Blanco, 507 So. 2d at 1384, the existence of "rare exceptions" does not render appellate counsel's failure to raise issues of ineffective assistance of trial counsel deficient performance. *See id.* ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. If the issue is raised on direct appeal, it will not be cognizable on collateral review. Appellate counsel cannot

conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir.1988)).

Here, Petitioner's Grounds One, Four, and Six are all claims of ineffective assistance of trial counsel (doc. 1 at 3–4, 10–14, 17–18). Florida law is well settled that claims of ineffective assistance of trial counsel are not, except under limited circumstances, cognizable on direct appeal. *See* State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) ("As to whether the issue of adequacy of representation can be raised for the first time on appeal, we hold that it cannot properly be raised for the first time on direct appeal, since, as was recognized in [Chester v. State, 276 So. 2d 76 (Fla. 2d DCA 1973)], 'it is a matter that has not previously been ruled upon by the trial court.' An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made."); *see also* Wuornos v. State, 676 So. 2d 972, 974 (Fla. 1996) (ineffective assistance of counsel claim not cognizable on direct appeal, only by collateral challenge); Johnston v. State, 841 So. 2d 349 (Fla. 2003) (claim that trial counsel was ineffective should have been raised in post-conviction proceeding). Additionally, under Florida law the proper procedural vehicle for an ineffective assistance of trial counsel claim is a Rule 3.850 motion. *See* Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987) ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850."); Barber, 301 So. 2d at 9 ("3.850 provides a means by which this issue may properly be resolved in a correct procedural setting in the trial court where evidence may be taken.").

Although there are "rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue," Blanco, 507 So. 2d at 1384, the existence of "rare exceptions" does not render appellate counsel's failure to raise issues of ineffective assistance of trial counsel deficient performance. *See id.* ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. If the issue is raised on direct appeal, it will not be cognizable on collateral review. Appellate counsel cannot

be faulted for preserving the more effective remedy and eschewing the less effective."). Petitioner failed to show that appellate counsel's failure to raise the issue of ineffective assistance of trial counsel was a decision that no competent counsel would have made. *See* Ballard v. McNeil, 785 F. 2d 1299, 1327–28 (N.D. Fla. 2011) (rejecting ineffective assistance of appellate counsel claim on the same basis). Therefore, Petitioner failed to show he is entitled to federal review of Grounds One, Four, and Six.

Petitioner contends he is entitled to review of Grounds Two, Three, Five, Six, and Seven through the "actual innocence" or "miscarriage of justice" exception to the time bar (doc. 22 at 12–22). These claims are as follows:

> Ground Two: "Trial counsel was ineffective for failing to investigate and/or access witness testimony and failure [sic] to present said witness testimony on behalf of defense."
>
> Ground Three: "Trial counsel was ineffective for failing to convey a second plea offer which would have allowed the defendant to enter a plea, avoiding sex offender sanctions and trial."
>
> Ground Five: "Trial counsel was ineffective for failing to object to motion in limine which prevented defense witness from testifying in regard to prior false allegations made by the alleged victim."
>
> Ground Six: "Trial counsel was ineffective for failing to object to improper comments of the prosecutor during closing arguments."
>
> Ground Seven: "The cumulative effect of the issues contained herein resulted in an unfair proceeding and prejudice to defendant."

(doc. 1 at 5–10, 14–18).

To satisfy the "actual innocence" or "miscarriage of justice" exception to a procedural bar, Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). Assuming arguendo that this exception applies to the AEDPA's time bar, Petitioner must (1) present new reliable evidence that was not presented at trial, and (2) show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. *See* Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011–12 (11th Cir.

2012) (citations omitted). Allegations concerning only legal innocence, as opposed to factual innocence, are insufficient to satisfy the "actual innocence" standard. *See* Rozzelle, 672 F.3d at 1012 ("Our decisions . . . show that if such an [actual innocence] exception [to AEDPA's one-year filing window] exists, it exists only for actually innocent petitioners."); *see also,* Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1333 (11th Cir. 2008) ("'Actual innocence' means factual innocence, not mere legal insufficiency." (quoting Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998))); Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1274 (11th Cir. 2004) ("Actual factual innocence is required; legal innocence is not enough.").

The "new" evidence must do more than counterbalance the evidence that sustained the petitioner's conviction. *See* Rozzelle, 672 F.3d at 1016–17 (citation omitted). "The new evidence must be so significant and reliable that, considered with the trial record as a whole, it 'undermine[s] confidence in the result of the trial' such that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Rozzelle, 672 F.3d at 1017 (quoting House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

Here, the only "new reliable evidence" that was not presented to the jury and allegedly supports Petitioner's claim that he is actually innocent of the lewd or lascivious battery charge is testimony from three defense witnesses, "Jackie," Lonnie Roberts, and Bill Giddens (doc. 1 at 5–6, 14–16; doc. 22 at 12–14). Petitioner contends the State's case rested entirely on the victim's credibility, because there was no physical evidence of sexual contact between the victim and him (*id.*). He argues the testimony of "Jackie" and Lonnie Roberts impeached the victim's credibility by showing she had previously falsely accused other adult men of sexually abusing her (doc. 22 at 12–14). Petitioner contends the testimony of Bill Giddens would have impeached the testimony of one of the State's witnesses and supported an alibi defense (*id.*).

Petitioner alleges "Jackie" was the mother of the victim's friend (doc. 1 at 5). He alleges "Jackie" would have testified that the victim had previously accused a friend's father of acts similar to those she accused Petitioner of (*id.* at 5–6; *see also* Ex. I at 115). However, Petitioner has not proffered any evidence that "Jackie" would have testified at his trial, much less that her testimony

would have been as Petitioner describes.[8] Petitioner's assertions that "Jackie" would have actually testified, and that her testimony would have been as Petitioner suggests, are purely speculative and thus insufficient to support a claim of actual innocence.

With regard to Lonnie Roberts, Petitioner alleges the State filed a motion in limine to exclude Lonnie Roberts's testimony. That portion of the State's motion stated the following:

> During the course of the deposition of Reciprocal Defense Witness, Lonnie Roberts, the defendant's father, Lonnie Roberts testified about an incident that he overheard several years ago when the victim was (maybe) 11 years old. According to Lonnie Roberts, he was sitting outside when he overheard the victim and her same age friend arguing in a pool. The other little girl's father intervened and told the victim to go home. Then, the victim's stepfather came and argued with the little girl's father. The victim's stepfather allegedly accused the little girl's father of yelling and cursing the victim. This evidence is irrelevant. There is no indication that the victim made any statements to her stepfather. Lonnie Roberts did not hear the victim make any statements to her stepfather. He and the defense just surmised based on the stepfather's reaction that the victim made a false allegation. This kind of evidence is not relevant, but if relevant, its relevancy is minimal and is outweighed by the danger of unfair prejudice or confusing the jury.

(*see* Ex. I at 92–93, 122–23). Petitioner contends evidence that the victim had previously made a false allegation concerning the integrity of an adult was relevant to his defense that the victim fabricated the sexual abuse allegations against him (*id.* at 122–23). Even if Lonnie Roberts had testified as he did in his deposition, Petitioner failed to show this would have had any effect on the jury's verdict. Petitioner proffered nothing to show that Lonnie Roberts would have testified that he knew what, if anything, the victim relayed to her stepfather after she left her friend's house, let alone that she relayed false information regarding her friend's father. Therefore, Petitioner failed to show that Mr. Roberts's testimony would have been probative of the issue of the victim's credibility. He further failed to show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt had the jury heard Mr. Roberts's testimony that he overheard (1) the victim and her friend argue in a pool, (2) the friend's father direct the victim to go home, and (3) the victim's stepfather accused the friend's father of yelling and cursing at the victim.

---

[8] Petitioner has not presented the court with a sworn statement from "Jackie" herself attesting to the facts described by Petitioner and her willingness to so testify. Nor has he submitted any other evidence to support his allegations regarding her testimony.

Case No.: 3:13cv82/WS/EMT

With regard to Bill Giddens, Petitioner alleged in his Rule 3.850 motion that Giddens would have testified that Petitioner was with him on Sunday, September 17, 2006 (Ex. I at 111, 115–16). Petitioner submitted an excerpt from Giddens's deposition in which Giddens testified that Petitioner spent all day at the river with him (*id.* at 97). Petitioner contends Giddens's testimony would have impeached the testimony of State's witness Bryan McLaughlin, and it would have supported an alibi defense. Bryan McLaughlin testified at trial that on September 17, 2006, he and the victim were in a neighborhood park (Petitioner, the victim, and McLaughlin lived in the same neighborhood), and the victim told him "what was going on" (Ex. D at 97–99, 107–08). McLaughlin testified he advised the victim to call law enforcement or tell her parents (*id.*). McLaughlin testified he had observed Petitioner drive by the neighborhood park three times that day (*id.* at 108).

The fact of whether or not Petitioner drove around the neighborhood on September 17, 2006, was obviously known to Petitioner at the time of trial and was thus not "new." Additionally, the jury heard the substance of Bill Giddens's testimony through the testimony of Petitioner's wife, Kelly Roberts. She testified that on Sunday, September 17, 2006, she and Petitioner "hung around the house" in the morning, and went to the river later that day (Ex. D at 159). Moreover, Mr. Giddens's testimony would not have supported an alibi defense. The day Petitioner and Giddens were at the river (September 17, 2006) was three days <u>after</u> the sexual abuse occurred (September 14, 2006). Therefore, Petitioner failed to show it is more likely than not that no reasonable juror would have convicted him had the jury heard Mr. Giddens's testimony.

Petitioner has fallen far short of stating a colorable claim of actual innocence. Therefore, he is not entitled to review of his claims through this alleged exception to the AEDPA's time bar.

III.  CONCLUSION

Petitioner concedes his petition is untimely under § 2244(d), and he failed to demonstrate he is entitled to review of any of his claims through a recognized exception to the time bar. Therefore, his petition should be dismissed as untimely.

IV.  CERTIFICATE OF APPEALABILITY

Case No.: 3:13cv82/WS/EMT

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (doc. 17) be **GRANTED**, and the petition for writ of habeas corpus (doc. 1) be **DISMISSED** with prejudice as untimely.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 25<u>th</u> day of November 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.: 3:13cv82/WS/EMT